**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Washington Forest DUKE and John Richard Liles, Defendants-Appellants.**

**No. 27673.**

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1970.

---

Arturo C. Gonzalez, Del Rio, Tex., for appellants.

Seagal V. Wheatley, U. S. Atty., Warren N. Weir, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

Duke and Liles appeal from judgments of conviction based upon a jury's verdict of guilty on each of three counts involving heroin.[1] The critical question presented for review is whether the evidence of their possession of the heroin is sufficient to sustain their convictions.

The validity with respect to heroin of the last paragraph of 21 U.S.C. 174 (n. 1, *supra*), making possession of heroin sufficient evidence to authorize conviction, has been sustained once they were convicted. Turner v. United States, 1970, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610. There the Court recog-

---

1. Count 1 charges them with conspiracy under 18 U.S.C. 371 to violate 21 U.S.C. 174. Count 2 charges that they did import and cause to be imported into the United States approximately 86 grams of heroin in violation of 21 U.S.C. 174. Count 3 charges the transportation and concealment of the heroin in violation of the same 21 U.S.C. 174. Each of the counts also names Pablo Sanchez-Trevino, hereinafter referred to as Sanchez, as a principal but not as a defendant. Sanchez had been killed in an automobile accident prior to the indictment. We quote the pertinent parts of 21 U.S.C. 174.

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

nized that, "given the statutory inference and absent rebuttal evidence, as far as a defendant is concerned the § 174 crime is the knowing possession of heroin."

A Winston cigarette package containing approximately 83.6 grams of heroin was found under the right front seat of an automobile occupied by the three principals. Specifically, the question is whether there is sufficient evidence from which the jury could properly determine that either one or both of the defendants had knowing possession of the heroin.

■ The question of the sufficiency of the evidence was properly raised by motions for judgment of acquittal both at the close of the government's evidence and at the close of all the evidence. See Rule 29, Fed.R. Crim.P. The standard by which this Court reviews denial of such a motion has been repeatedly stated, and need be but briefly summarized. Only the motion made at the close of all the evidence need be considered. We consider the evidence and the inferences therefrom in the light most favorable to the government. Upon such consideration, we must decide whether a reasonable-minded jury might fairly conclude guilt beyond a reasonable doubt, or, as otherwise stated in circumstantial evidence cases, whether the jury might reasonably deduce from the evidence inferences which exclude every reasonable hypothesis but that of guilt.[2]

We proceed to scrutinize the evidence and inferences which the jury might reasonably draw therefrom in the light most favorable to the government.

The three principals, Liles, Duke and Sanchez, were arrested about eight miles west of Del Rio, Texas, in a 1960 model Buick sedan bearing a Washington State license. Underneath the right front seat, Customs Agent Wilson found a Winston cigarette package which contained 83.6 grams of heroin. According

to Agent Wilson, heroin sells in the Del Rio area for from $25.00 to $30.00 per gram, so the 83.6 grams would have sold for between $2,000.00 and $2,500.00. Each of the three men denied ownership of or any knowledge of the heroin. Liles admitted ownership of the car. Duke was driving, Sanchez was on the right front seat, and Liles was in the back seat. At the trial, Customs Agents Wilson and Kuykendall and both of the defendants Liles and Duke testified.

There was no evidence to connect any of the three principals, Liles, Duke or Sanchez, with narcotics previous to the offenses for which Liles and Duke were convicted. Liles had lived in Moses Lake, Washington, for eight years, where he had bought and sold used cars, sold hair wigs, worked as a technician on vending machines, and been a bartender. This was Liles' first trip to Texas or to Mexico.

Duke lived in Las Vegas, Nevada, with his wife and two children. He worked for the Government at the Nevada testing ground as a laborer, but was laid off because of a reduction in forces. Duke and Liles met in Las Vegas in 1966 and became good friends. Duke had been to Washington one time previously. He had returned there in June 1968 looking for a job, or so he claimed.

Liles and Duke were Negroes. Sanchez was a Latin American migrant worker who originally lived with his parents in Crystal City, Texas, but went to the State of Washington to work in the beet field harvest. At the time of his arrest he was renting a house in Moses Lake, Washington, where he had left his pregnant wife and a small child. Liles testified that Sanchez had been living in Moses Lake, Washington, for four years and that he and Sanchez had become good friends. Duke testified that he had met Sanchez on his earlier trip to Washington.

2. Glasser v. United States, 1925, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; South v. United States, 5 Cir. 1969, 412 F.2d 697, 699; Montoya v. United States, 5 Cir. 1968, 402 F.2d 847, 850; 2 Wright Federal Practice & Procedure, § 467.

Liles and Duke undertook to testify to the purpose of the long trip. According to Liles, Sanchez had a vacation coming. Liles' continued testimony gives about as clear purpose of the trip as was stated.

"He was working as a—drove a lifting—operated a lifting machine, and he worked through his vacation, and he had taken off, you know, after the vacation was over, and he worked, and worked, so then he came to a point to where he took off, okay, so now he asked me if I would like to go to Texas with him, you know, and he don't own an automobile himself, so I told him, I says, 'No, I never been to Texas before but,' I says, 'it might be a good idea, but,' I said, 'I will have to take off also.' Now, at this particular time Mr. Duke was out there, he came up there on a job. So, in the process of all of this, Mr. Duke's mother is from Texas, and they had broke down, you know, on the highway and had car trouble on the way back, so then it was really a good idea to drive down. Then after we got halfway down there, well, then her sister or somebody in the family had made it possible for them to get back home, so then we decided we'd just come on in anyway, and then Mr. Sanchez lived in Crystal City, and he said he had some clothes and things he wanted to pick up, you know, various things, so we thought it was a good idea, so we just drove down here, and like I said, we had never been down here, so like I said, well, we wanted to see it."

The three, Liles, Duke and Sanchez, left on the journey from Moses Lake, Washington, to Del Rio, Texas, and Ciudad Acuna, Mexico, about June 25, 1968. They drove continuously, stopping only for gasoline or food, by-passing Los Angeles and by the shortest route to El Paso, Texas, through Arizona and New Mexico on to Del Rio, Texas, where they arrived about June 28. On June 29, Customs Agent Wilson noticed the 1960 model Buick sedan bearing the Washington State license, and belonging to Liles,

in the zone of prostitution in Ciudad Acuna. From time to time between June 29, 1969 and July 5, 1969, Wilson observed Liles' car in Ciudad Acuna, in Del Rio and at the International Border. On each of those occasions, Wilson observed only Liles and Duke in the car. He first observed Sanchez in the car as the three were departing from Del Rio on July 5.

The three first spent several days in a motel in Del Rio and then moved to a little hotel in Ciudad Acuna, Mexico, where the rates were cheaper, and remained for a few days. Ciudad Acuna is located immediately across the boundary line from Del Rio, Texas. While in Mexico, the three went to shows, bought souvenirs, rode cabs, listened to music, and slept. They occasionally returned to Del Rio to make phone calls and eat. On the morning of July 5, 1968, Duke and Liles drove the car from Ciudad Acuna to Del Rio, but no search or inspection was conducted by the border inspectors because of instructions left with them by Agent Wilson. During that day, July 5, Sanchez went to a bank in Crystal City, Texas, and obtained a loan for $300.00, for which he signed a note. In the afternoon of July 5, the two customs agents concealed themselves in a room at a motel across the street from the Piggly Wiggly grocery store parking lot and observed the Buick with the Washington State license plate drive into that lot. As it entered, Duke was driving and Liles was seated in the right front seat. No other occupant of the car was visible to the agents. Liles left the car, walked toward the entrance of the grocery store, and was out of sight of the customs agents for about five minutes. When he returned to the car he got into the rear seat, the car drove to a gasoline station and thence to Leslie's Chicken Shack, where they spent approximately 30 minutes, and thereafter to a small complex of buildings containing a liquor store and shoe repair shop, where they spent from 30 to 45 minutes, during which time they used the telephone. The customs agents did

not see Sanchez get in the car. Liles testified, however, that they parked at the shoe repair shop waiting on Sanchez; that

> "We were sitting in the back of the car, and as I say I don't know the exact time, but anyway a truck pulled up, I don't know whether it was a Chevvy or what, but Mr. Sanchez was in the truck with another Spanish guy and a little kid, and he got out of the car, and he came over, and he had a bag of something in his hand, I don't know what it was, and he got in the car and down the highway we went."

About 8 miles west of Del Rio, the customs agents stopped the 1960 Buick, identified themselves as customs agents, and requested the occupants to step out of the vehicle. It was then that Agent Wilson discovered a Winston cigarette package, not relatively new, inside which was 83.6 grams of heroin.

Upon making that discovery, Agent Wilson placed the three occupants in the car under arrest. The remainder of the vehicle was searched but no items were discovered which might have been purchased in a grocery store, nor were any souvenirs or other items discovered. At the time of their arrest, Duke had approximately $120.00, Liles about $20.00, and Sanchez something over $100.00. A package of Winston cigarettes was discovered in Sanchez's pocket, and Agent Wilson testified that Duke and Liles both had cigarettes on their person, one a package of Salems and he did not remember the brand which the other one had. There were other detailed circumstances, but we find no particular probative value in any of them.

We come then to the question, could the jury reasonably conclude from the evidence that the two defendants, either jointly or separately, had knowing possession of the heroin? The government insists that the close friendship among the men, the long and strenuous trip which they had taken, the apparently frivolous justification for such a long trip, their constant association while in Del Rio, and the very considerable cost of the heroin—between $2,000 and $2,500—all combined to justify an inference by the jury that this was a joint venture to obtain heroin.

The case is somewhat similar to Guevara v. United States, 5 Cir. 1957, 242 F.2d 745, where a package containing 50 marihuana cigarettes had been found on the floor of Guevara's automobile, between the driver's seat and the passenger's seat, and we held the evidence insufficient to sustain Guevara's conviction, stating that there was no rational connection between ownership and possession of the automobile and possession of the cigarettes; that it was just as reasonable to believe that the cigarettes belonged to the passenger as to Guevara; and that a jury must not be left simply to speculate and surmise in a criminal case.

In Bourg and Ledet v. United States, 5 Cir. 1960, 286 F.2d 124, 126, we distinguished the *Guevara* case, particularly because Bourg and Ledet had known each other for years, had set out on a long trip together, departed from the motel after midnight, and "particularly damaging were the *two* loaded revolvers and the box of ammunition on the front seat with defendants. No reasonable explanation was given of the intended use of these firearms." In that case we held that a reasonable jury could properly accept the evidence as adequate to support a conclusion of both defendants' guilt beyond a reasonable doubt.

The Ninth Circuit also in a similar case has emphasized the importance of the circumstantial evidence of close friendship between the occupants of the automobile and a relatively long trip in determining the sufficiency of finding beyond a reasonable doubt that the possession of narcotics was joint. Eason v. United States, 9 Cir. 1960, 281 F.2d 818, 821.[3]

3. More lately the Ninth Circuit has taken note that, "As our brothers of the Third Circuit put it, this court has gone 'as far as reason and fairness permit in inferring

In this case, however, after a careful study, we conclude that all of the admissible evidence which the jury was free to consider under the court's instructions was not sufficient to convince a reasonable juryman beyond a reasonable doubt that either or both of the defendants had knowing possession of the heroin. We find nothing from which a reasonable jury could fairly hold the evidence inconsistent with the hypothesis that Sanchez possessed the heroin and that its presence was not known to Liles and Duke.[4] Sanchez was the only one of the three who spoke Spanish, the one probably most familiar with the area and with the Mexican heroin dealers, the only one who smoked Winston cigarettes. Of the three, Liles and Duke were more often together and Sanchez separate. Sanchez also was seated directly over the place where the heroin was discovered. Of course, none of these circumstances has any real weight. They establish no more than a reasonable possibility that Sanchez alone possessed the heroin. But to paraphrase the language toward the end of the final paragraph of the Supreme Court's opinion in Turner v. United States, *supra*, the possibility is sufficiently real that a conviction resting on knowing possession of the heroin by Duke and Liles or either of them cannot be deemed a conviction based on sufficient evidence. We might well conclude differently if we could accept the government's argument in brief that, "On July 5, 1968, Agent Wilson received additional information from an informant who had furnished reliable information to him in the past. Wilson was told that the two gentlemen from Washington, both Negroes, one with a moustache and one with a beard, would be at the Piggly Wiggly parking lot on Avenue F at Del Rio for the purpose of receiving contraband. The description fit the gentlemen whom Wilson had been observing in the 1960 Buick with Washington license plates in the Del Rio area since June 29, 1968." The same type of argument was cogently urged on the jury on both the opening and closing arguments for the government, and stayed before the jury until the court came to give its final instructions, at which time the Judge clearly and explicitly instructed the jury as follows:

"During the arguments, you were asked by the Government to consider the surveillance by the narcotic officers of the car and the defendants on trial appearing at the Piggly Wiggly store as being a confirmation of information received and as being evidence for you to consider on the issue of the guilt of the defendants on the three counts of the indictment for which they are on trial.

"The Court instructs you that you are not to consider the information alleged to constitute the basis for the surveillance as evidence for any purpose whatsoever and you are not to speculate on the nature or content of any information mentioned by the officers as a basis for the surveillance. There have been no witnesses and no evidence presented here before you for examination by the Government and cross-examination by the defendant that would constitute admissible evidence on such matters, and it would be unfair and prejudicial to the defendants for you to consider such information as any evidence whatsoever in this trial.

"Again, I instruct you that you are not to speculate, surmise or imagine the nature of any such information and you are specifically instructed to disregard the arguments of Government's counsel made on that subject."

dominion and control.' United States v. Mills, 293 F.2d 609, 611 (3d Cir. 1961)." Hernandez v. United States, 9 Cir. 1962, 300 F.2d 114, 117 n. 4.

4. In so stating we attach no importance to the testimony of Federico Scott, a cell mate of Sanchez while Sanchez was in jail on this charge, that Sanchez told him that he was the only one who had the heroin and that Liles and Duke didn't know anything about it. The jury might properly have disbelieved this testimony.

In a case as close as this one, we cannot be sure that the jurors were able to follow the instructions of the court, and that their verdict was based solely upon the evidence which the court held legally admissible.

The judgments of conviction are therefore reversed. In view of the possibility that the government may be able to present additional evidence, the case is remanded for further proceedings not inconsistent with this opinion. Montoya v. United States, 5 Cir. 1968, 402 F.2d 847, 850.

Reversed and remanded.