437 F.2d 271
 UNITED STATES of America, Plaintiff-Appellee,
v.
Dedorise Daniel DOYAL, Defendant-Appellant.
No. 30378 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprise
v.
Citizens Casualty Co. of N.Y., 431 F.2d 409 (5th Cir. 1970), Part I.
 United States Court of Appeals, Fifth Circuit.
 Jan. 5, 1971.
 
 Arturo C. Gonzalez, Del Rio, Tex., for defendant-appellant.
 Seagal V. Wheatley, U.S. Atty., Jeremiah Handy, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 Dedorise Daniel Doyal was tried and found guilty of illegal importation of cocaine and two counts of wrongful interference with officers of the United States Customs Agency. On appeal he launches a veritable broadside on the sufficiency of the evidence to support each of his convictions. After examining every one of his challenges, we affirm the district court.
 
 I. BACKGROUND AND ISSUES
 
 2
 On April 12, 1969, Mr. John Blackburn, Plant Quarantine Inspector, Mr. Jose M. Gonzalez, Customs Inspector, and Mr. William M. Nolan, Immigration Inspector, were working the midnight to 8:00 a.m. shift at the United States Port of Entry at Eagle Pass, Texas. Each wore the distinctive uniform which clearly identified his function as an agent of the United States government.
 
 
 3
 At about 2:15 a.m. these officers observed Appellant Doyal approach the Port of Entry building from Mexico. He was sitting on the right or passenger side of the front seat of a green Ford automobile. Inspector Blackburn approached the car from the driver's side at the primary inspection station and asked the driver and the passenger to declare their citizenship and to state what they brought from Mexico. The driver, who had been hired to bring Doyal into the United States, said he was a Mexican citizen and declared he had brought nothing from Mexico. Doyal exhibited his United States passport and stated, 'Oh, the usual things, suitcase and clothes.' At that time Inspector Blackburn observed a small package wrapped in paper on the seat between the driver and Doyal. In response to Blackburn's inquiry, Doyal stated that it was a chess set. Doyal was then referred to a secondary inspection check point where Inspector Gonzalez took over the task of examining and inspecting.
 
 
 4
 As Inspector Gonzalez approached the car, Doyal had already gotten out and was standing beside it. Doyal handed Gonzalez his passport and stated that he was from Chicago. He declared one chess set, a ring valued at $35.00, and his personal belongings. After helping to unload Doyal's suitcase and plastic clothes bag, the driver remained at the rear of the car during the entire inspection. Doyal, however, moved about the inspection table. Inspector Gonzalez opened Doyal's suitcase and saw an unwrapped chess set inside. No separate package containing any other chess set was ever found. Meanwhile, Inspector Nolan, who was searching the car, located a package under the right front seat and placed it on the inspection table to the left of Inspector Gonzalez. The package was wrapped in brown paper with a string around it.
 
 
 5
 As Inspector Gonzalez was finishing his examination of Doyal's clothes bag, he heard the door of the car open and saw that Doyal was reentering the car. He also then noticed a package on the top of the back seat and reached through the rear window to retrieve it. The first thing that he apprehended was that the package bore both the address of a party in Chicago and a return address in the same city. A glance at the spot on the table where Inspector Nolan had placed a similar package earlier, revealed it had disappeared.
 
 
 6
 After Inspector Nolan had previously placed the package found under the left front seat on the inspection table, he had then continued to inspect the car. When he got to the rear door, he too observed a package of the same size, similarly wrapped, and similar in color, laying on the back seat of the car. Like Inspector Gonzalez, he glanced at the inspection table and noticed the package that he had originally placed there was gone.
 
 
 7
 Inspector Nolan heard Doyal respond to Inspector Gonzalez's inquiry about this razzle-dazzle package that it belonged to him and contained a tablecloth, a gift for his Mother, which he had forgotten to mail. Inspector Gonzalez asked Doyal to removed the contents from the package. When Doyal feigned difficulty in getting the package open, Gonzalez took the package from him and started to slip the string off. As he was doing so, Doyal made a lunge for the package. They struggled for a moment, the package dropped to the ground, and Doyal ran. After a brief chase, Inspectors Nolan and Gonzalez nabbed the fleeing, struggling Doyal.
 
 
 8
 When Inspector Gonzalez opened the package it was found to contain a small black case with three parcels, which later analysis proved held approximately 750 grams of cocaine. Inspector Gonzalez also retrieved from the area of the altercation Doyal's passport and Mexican entry permit. These documents reflected the same Chicago address as was found on the package.
 
 
 9
 At trial, a witness established that the package had been in the United States prior to its confiscation at the border. The Eagle Pass, Texas Postmaster testified that a meter stamp which appeared on the confiscated package was one that had been issued in his post office on April 11.
 
 
 10
 Following his arrest, Doyal was indicted by a federal grand jury in a four count indictment for violation of 21 U.S.C.A. 174 (1961), which penalizes the illegal importation of narcotics; 18 U.S.C.A. 1407 (1966), which requires registration before a convicted addict may enter the United States; and for twice violating 18 U.S.C.A. 111 (1969), which prohibits interference with or assault upon officials of the United States while they are engaged in the performance of their official duties. The charge for failure to register was dismissed prior to trial. Doyal, however, was tried on the remaining three counts. After a jury returned a verdict of guilty on each count, the court imposed a sentence of 10 years for illegal importation and separate 3-year sentences on the interference charges, all sentences to run concurrently:
 
 
 11
 Doyal now alleges that the trial court erred in overruling his motions for acquittal under each of these counts since the evidence was insufficient to support a conviction on any of the three. We disagree.
 
 II. THE SMUGGLING CONVICTION
 
 12
 Doyal contends that the evidence which led to his conviction for trafficking in drugs was fatally defective since it left unexplained and unforeclosed possibilities and inferences which the jury might have drawn which would have indicated his innocence. Primarily, Doyal points out that the evidence failed to prove he knowingly possessed the cocaine. Secondarily, he asserts that the failure of the government to produce the taxi driver as a witness created the inference that the driver was intimately involved. Finally, in the alternative, Doyal argues that the evidence which indicated that the package containing the cocaine had previously been in the United States proved he was not guilty on the thesis that taking a drug out of the country and bringing it in again is not an act proscribed by 21 U.S.C.A. 174 (1961).
 
 
 13
 It is hornbook law that an appellate court must sustain a conviction if, taking the view most favorable to the government, the evidence was sufficient to have withstood a motion for directed verdict of acquittal. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Kershner, 432 F.2d 1066 (5th Cir. 1970.) Although Doyal proffers many hypotheses of what might have happened, the government presented abundant evidence by which the jury could have concluded beyond a reasonable doubt that Doyal illegally imported cocaine into the United States.
 
 
 14
 Evidence of Doyal's possession of the contraband is extensive. The package bore the same address as was found on Doyal's papers. Doyal removed the package from the inspection table and returned it to the automobile, and perhaps more importantly, Doyal acknowledged the package to be his. An examination of the evidence leaves no doubt as to who possessed the package and the cocaine inside it.
 
 
 15
 Having disposed of the threshold question of possession, we next consider whether the cocaine was possessed with knowledge. Once again we discern evidence which was fully sufficient to support the requisite finding of knowledge.
 
 
 16
 Knowing possession is susceptible of proof by circumstantial as well as by direct evidence. Such circumstantial evidence encompasses actions at the time of one's arrest. Bourg v. United States, 286 F.2d 124 (5th Cir. 1960). Doyal's removal of the package from the inspection table, his calculated inability to perform the simple act of opening the package when requested, and finally his attempt to grab the package and run all indicate that Doyal knew the nature of the package's contents. Proof of attempted flight alone could evince guilt. United States v. Ballard, 423 F.2d 127 (5 Cir. 1970). Indeed, from Doyal's actions we see but one reasonable hypothesis for the jury to have drawn with respect to knowing possession-- guilt, not innocence.
 
 
 17
 We do not agree with Doyal's contention that the failure to produce the taxi driver left a reasonable hypothesis of guilt unforeclosed and that the presence of any unexplained, reasonable hypothesis in a circumstantial evidence case warrants the granting of a motion for judgment of acquittal. As was pointed out in United States v. Brown, 419 F.2d 1106, 1108 (5th Cir. 1969).
 
 
 18
 Although the evidence of these elements is here inferential and circumstantial, this does not proscribe a finding of guilt. Sykes v. United States, 5 Cir. 1966, 373 F.2d 607. In this type of case, we may reverse only where the jury would be compelled to conclude from the evidence that there were reasonable hypotheses of innocence. In other words, if the evidence is such that the jury could have believed that the defendants were guilty beyond a reasonable doubt, then the jury verdict must stand. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; Strauss v. United States, 5 Cir. 1963, 311 F.2d 926, cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412; Vick v. United States, 5 Cir. 1954, 216 F.2d 228.
 
 
 19
 The evidence before us is clearly sufficient to meet this test. There was more than ample evidence by which the jury could have concluded that Doyal was guilty beyond a reasonable doubt. The government does not have to chink up every conceivable crack in the wall of proof. No showing was made that the driver was not equally available to both Doyal and the United States. No presumption arises under such circumstances indicating that his testimony would have been helpful to Doyal or harmful to the prosecution. United States v. Chapman, 435 F.2d 1245 (5th Cir. 1970) and Jennings v. United States, 391 F.2d 512 (5th Cir. 1969), cert. denied 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 136 (1968).
 
 
 20
 Moreover, this circuit has held that there is no rational connection between ownership and possession of the automobile and possession of the illegal drugs found within the auto which would implicate the driver-owner any more than the passenger. United States v. Duke, 423 F.2d 387 (1970). The drugs might as easily belong to one as to the other. Surrounding evidence is necessary to point to the guilty party. Here that evidence points overwhelmingly to the guilt of Doyal.
 
 
 21
 We also reject Doyal's alternative argument that, if the cocaine were acquired in the United States, the subsequent exiting from and returning to the United States with the drug would not be proscribed by 21 U.S.C.A. 174 (1961). If this court were to accept Doyal's argument, it would mean that if a person who had previously smuggled an illegal drug into this country without detection (or even one who legally possessed a regulated drug within this country), departed and then returned with the drug, he could illicitly import it under guise of it being his Mother's tablecloth or could refuse to declare it at all and be free of guilt. This argument is spurious. The purpose of 21 U.S.C.A. 174 (1961) is to stamp out all traffic in narcotics in the United States, except for legitimate medical purposes, by preventing uncontrolled drug importation. Pitta v. United States, 164 F.2d 601 (9th Cir. 1947). Thus, it would make no difference if the drug were taken out and brought back into the United States a number of times. Each time the drug was imported into the United States a violation would occur. United States v. Williams, 435 F.2d 1001 (5th Cir. 1970.)
 
 III. THE INTERFERENCE CONVICTIONS
 
 22
 While it may technically be unnecessary, in view of our affirmation of the drug charge, to discuss the interference convictions which resulted in shorter concurrent sentences, we will nevertheless examine the fusillade fired at the sufficiency of the evidence to support Doyal's conviction for these two crimes, in order to expressly deal in this direct appeal with every issue he presents.
 
 
 23
 Section 111 of Title 18 of the United States Code Annotated, provides for criminal sanctions against anyone who 'forcibly assaults, resists, opposes, impedes, intimidates, or interferes' with officers of the United States government, while such officers are engaged in the performance of their official duties.
 
 
 24
 Doyal points to the final scuffle with the officers and states that he was entitled to reasonably resist these officials at this point since he had not yet been placed under arrest. The weakness of this argument is that it not only ignores prior overt acts of interference committed by Doyal, but also disregards the more important consideration that his detention while being searched, even if unarrested, was completely justified.
 
 
 25
 The agents in the instant case were engaging in a valid border search, a search which is in a category very distinct from other searches and seizures. Walker v. United States, 404 F.2d 900 (5th Cir. 1968). Travelers who cross international boundaries may be stopped and required to identify themselves and their belongings before entry is permitted. Such border security measures are authorized by statute and are not violative of the Fourth Amendment. Alexander v. United States, 362 F.2d 379 (9th Cir. 1966). During the time of such a search one is not permitted to impede the officers by attempting to flee or to forcefully resist their attempt to prevent such flight.
 
 
 26
 As to the acts done in the vicinity of the car, particularly with respect to removing the package from the inspection table and attempting to grab it from Inspector Gonzalez's hand, Doyal contends that these were acts which only in their remote consequences would prevent the officers from performing their duties. To merely state the proposition is to refute it. Doyal obviously intended for his acts to prevent these agents from accomplishing their duties.
 
 
 27
 Finally, we reject Doyal's contention that he committed only one act of interference because only Inspector Gonzalez was involved. This ignores the fact that Inspector Nolan was actively engaged in searching the car and he had to aid Inspector Gonzalez in subduing Doyal.
 
 
 28
 The conviction of Dedorise Daniel Doyal on all three counts is
 
 
 29
 Affirmed.