**UNITED STATES of America, Plaintiff,**

**v.**

**Hughes Anderson BAGLEY, Defendant.**

**No. C84 882M (CR79 108M).**

United States District Court,
W.D. Washington.

May 11, 1987.

Mark Bartlett, Asst. U.S. Atty., Seattle, Wash., for plaintiff.

Thomas Hillier, Public Defender, Seattle, Wash., for defendant.

ORDER REJECTING IN PART REPORT AND RECOMMENDATION AND DENYING MOTION TO VACATE SENTENCE

### INTRODUCTION

McGOVERN, Chief Judge.

Hughes Anderson Bagley's motion to vacate sentence, filed pursuant to 28 U.S.C.

§ 2255, is before the Court on a report and recommendation from the Magistrate. The issue presented is whether Bagley's constitutionally flawed narcotics conviction, reversed on appeal, may constitute the predicate for firearms convictions under 18 U.S.C.Appx. § 1202(a) and 18 U.S.C. § 922(h) under the law at the time of the firearms convictions. While the Court adopts those portions of the Magistrate's Report and Recommendation concerning the factual and procedural background and Bagley's challenges to convictions, as well as the recommendation concerning the conviction under 18 U.S.C. § 922(a)(1), the Court rejects those portions of the Report setting forth the effect of reversal of the predicate conviction and the Magistrate's recommendation that Bagley's firearms convictions under 18 U.S.C.Appx. § 1202(a) and 18 U.S.C. § 922(h) be vacated. Accordingly, the Court also rejects the Magistrate's recommendation that Bagley be released if he had already served a five-year maximum term under the Section 922(a)(1) conviction and to resentence him if not.

## PROCEDURAL BACKGROUND

### Narcotics Conviction Reversed

In a 1977 bench trial, Bagley was convicted of narcotics violations under cause number CR77–330V. On May 12, 1982, after a hearing, Judge Voorhees denied Bagley's Section 2255 motion challenging his narcotics conviction for failure of the Government to reveal witnesses' receipt of money pursuant to forms entitled "Contract for Purchase of Information and Payment of Lump Sum Therefor." The District Judge concluded that even if he had known of those contracts, he nonetheless would not have changed his decision, it being probable that the witnesses received compensation for their assistance "though perhaps not for their testimony."

On November 10, 1983, the Ninth Circuit reversed Judge Voorhees' decision stating that the Government's failure to provide requested information pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), restricted Bagley's right to cross-examine and required automatic reversal. *Bagley v. Lumpkin*, 719 F.2d 1462 (9th Cir.1983).

On July 2, 1985, the United States Supreme Court reversed and remanded the case to the Ninth Circuit "for a determination whether there is a reasonable probability that, had the inducement offered by the Government to O'Connor and Mitchell been disclosed to the defense, the result of the trial would have been different." *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3385, 87 L.Ed.2d 481 (1985).

On September 2, 1986, the Ninth Circuit, 798 F.2d 1297, announced that it must make the determination ordered on remand pursuant to an objective standard rather than a subjective one—as Judge Voorhees, the trier of fact himself did—and concluded that the Government interfered with Bagley's right to a fair trial and that its *Brady* error undermined confidence in the outcome of the trial and required reversal of his conviction.

### Firearms Conviction Challenged

The current Section 2255 challenge to Bagley's conviction of firearms violations was filed July 5, 1984 but action on those claims was deferred until this time pending resolution in the appellate courts of his challenge to the narcotics conviction outlined above.

The Magistrate's Report and Recommendation concluded that Bagley's 1979 firearms conviction must be vacated because the 1977 narcotics conviction was reversed on constitutional grounds. The Report reasoned that while a 1980 U.S. Supreme Court opinion held that a firearms conviction will stand although the predicate felony may be subject to collateral attack on constitutional grounds, Bagley's firearms conviction must be vacated because the 1980 opinion constituted a reversal of the law in the Ninth Circuit at the time of the firearms transactions (between August 1978 to March 1979).

The following chronological analysis of the applicable Ninth Circuit law demonstrates that Ninth Circuit law in 1979 was harmonious with the 1980 Supreme Court decision, and that the perceived distinction

between the two was based on a conclusion of law in a 1971 Ninth Circuit case in conflict with then extant Ninth Circuit and Supreme Court jurisprudence. Bagley's firearms convictions must not, therefore, be vacated.

### ANALYSIS OF APPLICABLE LAW

Bagley's conviction in 1977 on 11 counts of narcotics violations constituted the predicate felony on which certain of the firearms charges were based. Firearms violations requiring a predicate felony are felon in possession of firearms (18 U.S.C.Appx. § 1202(a)) and felon in receipt of firearms (18 U.S.C. § 922(h)). Two counts of the former and three counts of the latter were charged in Cause No. CR79–108M.

Title 18 U.S.C.Appx. § 1202(a) provides:

§ 1202. Receipt, possession, or transportation of firearms

(a) Persons liable; penalties for violations. Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, ...

and who receives, possesses, or transports in commerce or affecting commerce, ... any firearm....

Title 18 U.S.C. § 922(h) provides:

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

...

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

On September 30, 1970, a Ninth Circuit opinion by Judge Hufstedler construed the effect of the reversal of the predicate felony conviction upon which a firearms violation was based and held that the defendant

Liles' possession of the revolver was unlawful for one of his status at the time he possessed it. It is not made lawful by the subsequent reversal of his conviction.

*United States v. Liles,* 432 F.2d 18, 21 (9th Cir.1970). Explaining its holding, the Court observed that the Defendant was struck with

what appears to him as an anomaly—he is going to prison because he was a felon in possession of a firearm, but his conviction for a felony had been overturned before he was convicted on the present charge. The anomaly is illusory.

*Id.* at 20. The Court then refers to 18 U.S.C.Appx. § 1202(a)(1) and states:

Both the broad language of the statute and its legislative history impel us to the conclusion that Congress intended to subject to Section 1202(a)(1) all persons, not within the classes expressly exempted: (1) who have been convicted of a felony, and (2) whose convictions have not been invalidated as of the time the firearm is possessed. Congress did not intend to exempt from section 1202(a)(1) one whose status as a convicted felon changed after the date of possession, regardless of how that change of status occurred. (*Cf. DePugh v. United States* (8th Cir.1968) 393 F.2d 367.)

*Id.* The Court then recites the rationale underlying the Section 1202 firearms provision:

The history of the gun control provisions of the Omnibus Crime Act evidences Congress' deep concern about the easy availability of firearms, especially to those who Congress had reason to believe pose a greater threat to community peace than does the public generally. (S.Rep. No. 1097, 1968 U.S.Cong.Ad. News pp. 2112, 2163–69)

*Id.*

The Court then points to the similarity between the concern of Section 1202 and the Federal Firearms Act, 52 Stat. 1250, section 2(a) which prohibits anyone under indictment for a felony to transport a firearm across a state line. Concerning the Federal Firearms Act, the Court referred to a question similar to that in *Liles* that arose in *DePugh* where it was held that the status of being under indictment at the time of the transporting made the prohibitions of the Act applicable in spite of the

fact that the indictment was later quashed. The Court noted that Section 1202 was no less sweeping than the Federal Firearms Act and speaks only of conviction of a felony; "it contains no requirement that the conviction be finally upheld on appeal." *Liles*, 432 F.2d at 20.

Finally the Court observes that Congress is clear in spelling out exemptions (18 U.S.C.Appx. § 1203), and that "subjecting a person to a penalty based on a status short of final conviction for a crime is not rare," *id.* at 21, citing, for example, bail forfeitures and actions for fleeing prosecution.

The predicate felony conviction of Liles was reversed in *United States v. Duke*, 423 F.2d 387 (5th Cir.1970) (Liles was Duke's co-defendant). It was this case that gave rise to the *Liles* case just discussed. It is important to review the basis for reversal in *Duke* because subsequent Ninth Circuit opinions concerning the validity of firearms convictions distinguished between constitutional and nonconstitutional reversals of the predicate felony conviction, and the basis for reversal in *Duke* was mischaracterized in one of those opinions.

At issue in *Duke,* was the question of the sufficiency of the evidence. The Court of Appeals was reviewing the motion for judgment of acquittal made at the close of all of the evidence. The Court stated the standard of review:

Upon such consideration, we must decide whether a reasonable-minded jury might fairly conclude guilt beyond a reasonable doubt, or, as otherwise stated in circumstantial evidence cases, whether the jury might reasonably deduce from the evidence inferences which exclude every reasonable hypothesis but that of guilt.

*Id.* at 389. The Court concluded:

All of the admissible evidence which the jury was free to consider under the Court's instructions was not sufficient to convince a reasonable juryman beyond a reasonable doubt that either or both of the defendants had knowing possession of heroin.

*Id.* at 392. Thus, the long-held view that a defendant may not be convicted except upon proof beyond a reasonable doubt formed the basis for reversal in *Duke* for insufficient evidence.

On March 31, 1970, the U.S. Supreme Court addressed the stature of sufficiency-of-evidence issues in deciding *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Court held:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Id.* at 364, 90 S.Ct. at 1073. The Court expressed the view that this was a long-standing principle evident from earlier opinions:

Expressions in many opinions of this court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required.

397 U.S. at 362, 90 S.Ct. at 1071.

*In re Winship* makes it clear that the reversal in *Duke* for insufficient evidence to convict beyond a reasonable doubt was mandated on constitutional grounds. While there may be a distinction between issues of (1) whether the beyond-a-reasonable doubt standard or some other standard is required in a criminal prosecution and (2) whether sufficient evidence was actually adduced to convict under the beyond-a-reasonable doubt standard, they are both of constitutional dimension. Indubitably, a defendant's constitutional right under the Due Process Clause would be violated if conviction rested on less evidence than the beyond-a-reasonable doubt standard permits.

Nevertheless on August 24, 1971, the Ninth Circuit decided *McHenry v. California*, 447 F.2d 470 (9th Cir.1971) and distinguished *Liles* saying the reversal of the predicate felony in *Liles* was of nonconstitutional dimension. In *McHenry* the court held that McHenry's 1960 conviction for statutory rape had been held invalid for infringement of McHenry's Federal consti-

tutional rights (without specifying which rights) and that, therefore, his subsequent conviction for being a felon in possession of a weapon was invalid; the trial court's granting McHenry's petition for habeas relief and ordering his full release from California custody was affirmed.

The court so held in a *per curiam* opinion upon the authority of *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), *United States v. Thoresen,* 428 F.2d 654 (9th Cir.1970), and *United States v. Dushane,* 435 F.2d 187 (2d Cir.1970). The Court did not rely on *Liles* because:

> The majority believes that *Liles* is clearly distinguishable, for there, as was not true in *Thoresen* and in the present case, the prior conviction was held invalid, not on any federal constitutional ground but because the evidence was insufficient.

*McHenry,* 447 F.2d at 471. Circuit Judge Eugene A. Wright dissented saying the case was controlled by *United States v. Liles,* 432 F.2d 18 (9th Cir.1970).

■ There are three reasons why *McHenry* is not the controlling case for decision in Bagley's case. The conclusion in *McHenry* that the prior conviction in *Liles* was held invalid on a nonconstitutional ground was inconsistent with *In re Winship* and, therefore, unsupported. *In re Winship* was decided well before *McHenry,* and there were earlier cases indicating that proof beyond a reasonable doubt was constitutionally mandated. *In re Winship,* 397 U.S. at 362, 90 S.Ct. at 1071. Furthermore, *Liles* left no room to create a distinction based on whether reversals of predicate felonies were made on constitutional or nonconstitutional grounds. The *Liles* court was, in its word, "impelled" to the conclusion, based on the broad language of the statute and its legislative history, that

> Congress did not intend to exempt from section 1202(a)(1) one whose status as a convicted felon changed after the date of possession, *regardless of how that change of status occurred.*

*Liles,* 432 F.2d at 20 (emphasis added). It must also be noted that *McHenry* involved a California firearms statute. (See discussion of *United States v. McWilliams,* 730

F.2d 1218 (9th Cir.1984) *infra.*) The *McHenry* court did not discuss the policy underpinnings of the California firearms statute pursuant to which McHenry was convicted; neither did it distinguish nor analogize it to the federal firearms statutes. Therefore because of (1) *McHenry's* erroneous distinction of *Liles;* (2) the broad sweep of *Liles,* which precludes narrowing its application; and (3) because *Liles* deals with the federal firearms laws rather than state law, *Liles* provides the best precedent for decision in Bagley's case.

■ In determining that *Liles* controls in this case, Ninth Circuit and Supreme Court authority is being followed and not ignored or distinguished. *Stare decisis* requires earlier announced legal principles to be followed by courts of equal or lower rank when facts are substantially the same. This policy provides stability and predictability in the law and should be departed from only to correct prior errors. *See, e.g., Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 240–41, 90 S.Ct. 1583, 1586–87, 26 L.Ed.2d 199 (1970). The Supreme Court also noted, however, that

> [*S* ]*tare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.

*Id.* at 241, 90 S.Ct. at 1587. *McHenry* collides with prior, binding authority of the Ninth Circuit and the United States Supreme Court. The court is constrained, therefore, to follow *Liles* and *In re Winship.*

■ Moreover, the reliance in *McHenry* on *Burgett, Thoresen,* and *Dushane* was misplaced. In *Burgett,* Texas Recidivist Statutes provided for enhanced punishment for conviction of an offense subsequent to previous felony convictions. *Burgett* held that a flawed felony conviction could not provide a basis to enhance punishment on a subsequent charge. *Burgett* is not precisely on point dealing as it does with a Texas

Recidivist Statute, the purpose and rationale of which likely is decidedly different than that underlying the Federal Firearms Statutes. It is rational to enhance the punishment of one who has past convictions, but only indeed if there have been reliable convictions. The rationale concerning firearms possession by indicted or convicted felons, is different. The rationale is set forth in *Liles,* and indicates a concern of Congress for the public safety and a desire to err on the side of prudence and to try to keep firearms away from those believed to pose a greater threat to the community until their status as convicted felons is cleared.

Neither *Thoresen* nor *Dushane* mandate a conclusion different from that in *Liles.* *Thoresen* demands that a defendant have an opportunity to establish the constitutional invalidity of a prior conviction. While *Thoresen* was decided on June 8, 1970, before *Liles, Thoresen* relied on *Burgett* and did not directly address the effect of an invalid predicate conviction on a subsequent firearms charge. That precise issue—the effect of reversal of a predicate conviction—was not addressed with reasoned analysis until *Liles.* While *Dushane* contradicts *Liles* and holds that a constitutionally invalid previous conviction could not be used to support the crime of a felon in possession of a firearm, *Dushane* was decided December 3, 1970 by the Second Circuit and was inappropriately relied upon in view of the Ninth Circuit's decision in *Liles* on September 30, 1970.

The following cases, *United States v. Pricepaul,* 540 F.2d 417 (9th Cir.1976), *United States v. O'Neal,* 545 F.2d 85 (9th Cir.1977), and *United States v. Herrell,* 588 F.2d 711 (9th Cir.1978), perpetuate the perceived distinction in the Ninth Circuit between a claim of constitutional and non-constitutional invalidity in the predicate conviction.

Finally, on February 27, 1980, about seven months after Bagley's firearms conviction, the U.S. Supreme Court decided *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In *Lewis,* the Supreme Court held:

We therefore hold that Section 1202(a)(1) prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds.

*Id.* at 65, 100 S.Ct. at 921. In reaching its conclusion, the Court cited the plain meaning of the sweeping language of the statute, the legislative history, and the ability of a convicted felon to remove the firearm disability by pardon or permission—the latter point suggesting that Congress intended a defendant to clear his status *before* obtaining a firearm. The Court concluded that the statutory scheme seeks to prohibit categories of presumptively dangerous persons from transporting or receiving firearms and notes that 18 U.S.C. §§ 922(g) and (h) applies the disability not only to a convicted felon, but also one under felony indictment without any indication of intent to require the Government to prove the validity of the predicate conviction or that the indictment lead to conviction. *Id.* at 63–64, 100 S.Ct. at 919–20. The Court declined to accept the petitioner's argument that the statute should be construed so as to avoid a constitutional issue, stating:

[t]hat course is appropriate only when the statute provides a fair alternative construction. This statute could not be more plain.

*Id.* at 65, 100 S.Ct. at 920.

The Court also concluded that the regulatory scheme was consonant with the concept of equal protection embodied in the Due Process Clause of the Fifth Amendment because the concern of Congress about the easy availability of firearms, especially to those persons who pose a threat to community peace, focused "on the nexus between violent crime and the possession of a firearm by any person with a criminal record." *Id.* at 66, 100 S.Ct. at 921. Thus there was a rational basis for the statutory distinctions. The Court also noted "that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm." *Id.* at 66, 100 S.Ct. at 921.

The Court specifically referenced *Burgett,* and stated that "[u]se of an uncoun-

seled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is not inconsistent with *Burgett, Tucker,* and *Loper.*" The Court explained that the conviction or sentence in those cases depended upon their reliability while "[t]he federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment in order to keep firearms away from potentially dangerous persons." *Id.* at 67, 100 S.Ct. at 922.

Thus, the Supreme Court in *Lewis,* in effect, affirmed *Liles. McHenry* therefore must be viewed as an anomaly without precedential effect. Judge Norris, in a concurring opinion in *United States v. McWilliams,* 730 F.2d 1218, 1224 (9th Cir.1984) made a similar observation concerning a defendant's firearms violations in 1975:

> In 1975, ... the law of the Ninth Circuit was consistent with *Lewis:* a challenge to a predicate conviction would not affect the validity of a subsequent firearms prosecution.

Judge Norris also stated that reliance on *McHenry*

> to undermine the authority of *Liles* and to support the proposition that Ninth Circuit law in 1975 permitted a convicted felon to collaterally attack a constitutionally infirm conviction in the course of a federal firearms prosecution seems to me misplaced. In fact, the *McHenry* court considered a violation of *California*'s firearms statute and read *Liles* as an opinion interpreting Congressional intent in enacting the Omnibus Crime Control and Safe Streets Act of 1968—the statute at issue here. *McHenry* does nothing to contradict *Liles*' interpretation of that statute: that Congress intended that no one under taint of a felony conviction be permitted to possess a weapon, regardless of the status of that conviction. I am unwilling to read *McHenry* as authority for the proposition that Congress is constitutionally disabled from enacting such a statute.

*Liles* has been circuit precedent since it was decided in 1970. *McHenry* did not reinterpret the federal firearms statutes, and its narrow interpretation of *Liles* was not legally sound.

## CONCLUSION

The law in the Ninth Circuit applicable at the time of Bagley's firearms violations and convictions was *Liles.* Liles' predicate felony conviction was reversed in *Duke* on constitutional grounds—insufficient evidence to convict beyond a reasonable doubt. *See In re Winship.* This basis for reversal was mischaracterized in *McHenry* and created an erroneous distinction. *Stare decisis* mandates that *McHenry's* erroneous conclusions may not be construed to distinguish prior, broad, and unambiguous Ninth Circuit authority nor to overrule a Supreme Court decision.

Therefore, the law existing in the Ninth Circuit when the conduct in issue occurred, that is, the firearms violations charged in 1979, was set forth in *Liles. Liles* is harmonious with *Lewis,* having reached the same conclusion after a similar analysis. *Lewis,* therefore, did not constitute a reversal of law in the Ninth Circuit, and there is no necessity to address the question of prospective or retroactive application of the principle stated in *Lewis.*

Accordingly, Hughes Anderson Bagley's motion to vacate sentence pursuant to 28 U.S.C. § 2255 is DENIED.