**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alvin R. JOHNSON, Defendant-Appellant.**

**No. 73-3643
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 14, 1974.

---

* Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Ronald S. Galloway, Dallas, Tex. (Court-appointed), for defendant-appellant.

Frank McCown, U. S. Atty., Ft. Worth, Tex., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

Alvin R. Johnson, a tax preparer, was charged in a thirteen count indictment with wilfully aiding and assisting in the preparation of federal income tax returns which were false and fraudulent as to material matters, in violation of 26 U.S.C.A. § 7206(2) (1970).[1] The 13 counts were based on returns either for different taxpayers or for the same taxpayer in different fiscal years. The jury exonerated him on the charges contained in counts 1–4 and 7–13 but found him guilty as charged in counts 5 and 6 for the unlawful preparation of the tax returns of Pedro and Bertha Martinez in the years 1970 and 1971.[2] On appeal, Johnson specifies 11 errors, each of which we deem to be without merit, and consequently we affirm.

Four of his contentions can be disposed of under the principle that if error was committed, it was harmless. These four contentions may be summa-rized as follows: the district court erred (1) in sustaining government objections to the admission of evidence despite the absence of any statement by government counsel of the grounds therefor, (2) in admitting alleged "inflammatory" exhibits, (3) in failing to grant a motion to dismiss the indictment, a mistrial, or a motion to strike the testimony of a witness who had violated the trial court's sequestration order, and (4) in admitting over objection a copy of Johnson's own tax return. The first three assigned evidentiary errors each related to counts of the indictment upon which Johnson was exonerated.[3] And since these counts were totally unrelated to those upon which he was convicted, we fail to perceive the manner by which the asserted evidentiary errors prejudiced his case. The government introduced Johnson's own return as evidence of a similar offense, clearly permissible under United States v. Rodriguez, 474 F.2d 587, 590 (5th Cir. 1973). Since closer examination of the return revealed that Johnson did in fact take proper deductions, any error occasioned by its admission was invariably harmless. Indeed the fact that his own return was not found to be incorrect could have been helpful to his defense.

Johnson's fifth contention is that the evidence was insufficient to support a conviction on counts 5 and 6.

1. The pertinent provisions of 26 U.S.C. § 7206(2) (1970) are:

"Any person who—

(2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document;

\* \* \* \* \*

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

2. Counts 1 and 2 relate to tax returns of Ben and Mary Marcus for the years 1970 and 71, counts 3 and 4 relate to the returns of Roy Franklin for the years 1970 and 71. Counts 7–13 relate to different taxpayers for returns prepared by Johnson in 1971 and 1972.

The appellant was given a 13 month sentence under counts 5 and 6, but the sentences were suspended and appellant placed on probation for a period of 18 months, the sentences to run concurrently.

3. An examination of the record reveals that Johnson did not question the trial court's rulings on government objections unaccompanied by an explanation of the grounds therefor. Accordingly, this contention is governed by the plain error standard of F.R. Crim.Pro. 52(b).

As support for this claim, he points to the equivocal response of Pedro Martinez to the question whether he had made a contribution to St. Joseph's Hospital. Under controlling principles, "a jury verdict must be sustained if there is substantial evidence when viewed in a light most propitious to the government to support it." United States v. Peterson, 488 F.2d 645, 649 (5th Cir. 1974). See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Hernandez, 484 F.2d 86, 87 (5th Cir. 1973). Johnson's argument that the evidence was insufficient to support his conviction rests on the premise that the equivocal response of Martinez to one question irretrievably impugns his testimony concerning the other claimed improper deductions catalogued in counts 5 and 6 of the indictment. Since we cannot accept this premise and feel that it was within the province of the jury to reject it, we hold that the evidence was sufficient to support a guilty verdict on counts 5 and 6.

 Johnson's next four contentions relate to events transpiring during the time when Pedro Martinez was on the witness stand. His sixth assignment of error, that the trial judge displayed impermissible bias in instructing the government to ask Martinez to estimate the value of clothing contributed to Goodwill Industries rather than asking him whether such value exceeded various amounts from $10 to $50 is controlled by United States v. Wilson, 488 F.2d 688, 691 (5th Cir. 1973). There, we noted that "[a] trial judge has the right and the duty to participate in the conduct of the trial proceedings to insure that justice is done."[4] His seventh grievance, that the trial judge erred in refusing to permit him to examine Martinez on "voir-dire" when the latter gave equivocal responses to questions concerning the amount of his contribution to St. Jo-

seph's Hospital, is also unavailing. Johnson's attorney proffered no explanation for this request. In view of the avowed policy, as expressed in F.R. Crim.Pro. 26, in favor of taking testimony in open court, we fail to discern how error was committed.

 The two other errors, specifications 8 and 9, allegedly committed while Pedro Martinez was testifying require more extended discussion. Johnson objected to one repetitive and two allegedly leading questions posed by the government attorney. The first leading question, relating to the value of clothing contributed by Martinez to Goodwill Industries, was cured by the trial judge's instruction to the government attorney to ask Martinez the value of the clothing donated and not whether the value was of a certain amount at various intervals between $10 and $50. The second question, the thrust of which was whether Martinez had spoken to Johnson about expenses for work uniforms claimed on the return as deductions, does not appear to have been a leading question. Moreover, even if Johnson's characterization of the question is correct, a trial judge has reasonable discretion to permit leading questions. Azcona v. United States, 257 F.2d 462, 466 (5th Cir. 1958); United States v. Bensinger Co., 430 F.2d 584, 591 (8th Cir. 1970); Esco Corp. v. United States, 340 F.2d 1001, 1005 (9th Cir. 1965), and such discretion is abused primarily where the question asked has the effect of supplying a witness with a false memory, United States v. Durham, 319 F.2d 590, 592 (4th Cir. 1963). Thus, even if the question asked concerning deductions for uniforms could be characterized as leading, it could not be deemed to have supplied Martinez with a false memory. Hence there was no abuse of discretion with respect to the allegedly leading questions. The posing of the so-called repetitive ques-

---

4. Additionally, we would note that Johnson failed to object to the trial court's action. Thus, even if we agreed that the trial court committed error in this respect, we would nevertheless conclude that it did not arise to the level of plain error under F.R.Crim.Pro. 52(b).

tion was prompted by Martinez' ambiguous response to a question regarding the amount of money he contributed to St. Joseph's Hospital. There was some need to clarify Martinez' answer and in any event, since defense counsel was free to probe his inconsistent statements on cross-examination, we fail to see how error inhered in permitting a repetitive question to be posed.

■ The additional evidentiary error allegedly committed while Martinez was testifying is characterized as the failure of the trial court to require a proper predicate to be laid before Martinez testified on the basis of a present recollection refreshed.[5] Defense counsel's objection to the trial court's refusal to grant the motion to strike reveals the spurious nature of Johnson's claim:

> "Your Honor, may we let the record reflect that at the time a Motion was made that the prosecuting attorney was standing at the witness stand, that he had placed the Indictment open to Page 2 of said Indictment and that said Indictment was situated in such a manner, that it was immediately to the witness's left and exposed in a manner so that it was readable from the angle in which the witness was sitting."

As witnessed by its disposition of the motion, the district court refused to indulge in defense counsel's speculative assertion that Martinez testified on the basis of the indictment within viewing distance and not on the basis of independent recall. Defense counsel had the opportunity to substantiate this assertion by cross-examining Martinez concerning the source of his testimony about the deductions. Nothing in the record indicates that Martinez was unable to testify based on independent recollection. Consequently, we fail to comprehend how this court may upset the trial court's unarticulated but neverthe-

less unimpeached assumption that Martinez testified on the basis of an independent recollection and not one refreshed by the contents of the indictment handed down against Johnson.

■ Johnson's tenth contention is that the trial court erred in granting the government's motion to quash subpoenas duces tecum issued to 3 employees of the Internal Revenue Service, W. T. Coppinger, Tony Hunter, and Ann Lake, seeking copies of tax returns for Lee Jones and Robert Myers for the 3 years preceding 1973. The trial judge's explanation for granting the motion to quash reveals that Johnson's primary concern in issuing the subpoenas was not to examine the particular returns purportedly sought but to question the named parties concerning statements made to them by IRS agents. Moreover, Coppinger, Hunter and Lake had no demonstrable connection with either Johnson or Pedro Martinez. As this court noted in United States v. Moudy, 462 F.2d 694, 698 (5th Cir. 1972) Rule 17 of the Federal Rules of Criminal Procedure "leaves broad discretion in the district court by allowing the trial judge to weigh numerous factors, including materiality, relevancy, and competency, in deciding whether to grant the request for a subpoena." *See also* United States v. Hathcock, 441 F.2d 197, 199–200 (5th Cir. 1971); United States v. Bearden, 423 F.2d 805, 809–810 (5th Cir.), cert. denied, 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970); United States v. Gurule, 437 F.2d 239, 241 (10th Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971). Under the facts in this case, this discretion was not abused.

Johnson's final contention is that the district court erred in overruling his motion for a new trial based upon alleged juror misconduct in reaching a compromise verdict. Although the record discloses that the jurors unani-

---

5. Defense counsel incorrectly characterized the indictment as a memorandum of past recollection recorded. Since Martinez did not prepare the indictment, it could not be introduced under the rubric assumed by defense counsel. We have taken the liberty of correcting the mischaracterization.

mously confirmed in open court that it was the verdict of each and every member of the panel on each of the counts, one member of the jury subsequently disclosed to the prosecuting attorney that the verdict was the product of compromise. This disclosure prompted the district judge to order a hearing designed to unearth the possibility of juror misconduct.

During the course of the hearing, two jurors gave testimony favorable to Johnson. The foreman, Gregory Baker, confirmed the allegation that the verdict was a product of a "trade out" or compromise. Tom Bellamy, a second juror stated his belief that Johnson was not guilty. The remaining ten jurors testified variously that they did not recall any compromise, that they had deemed him guilty prior to the alleged compromise, or that the alleged compromise did not cause them to change their initial vote of not guilty on counts 5 and 6 to guilty on these counts. In the face of this testimony, the trial judge denied Johnson's motion for a new trial. His reasoning was as follows:

"I don't imagine there ever was a jury verdict that wasn't a result of some sort of compromise when you start talking to a jury about that. And sure, they compromise, they don't always start out of the same mind. I've rarely seen one that did.

Now, I cannot find that the evidence preponderates here in favor of the proposition that there was a trade out, that there was a trade among the jurors to vote this way because somebody else voted that way. It seems obvious to me that they went down the line, when they found they were in disagreement, they went down the line with each Count and discussed it.

Now, where we draw the line is juror impeachment, asking what prompted him to vote this way, is a mental process and you can delve into that when there is some overt act of misconduct and I just don't believe there was any here. I'm sure that every juror, Mrs. Erlanger and some of the others, felt that there was a compromise, but not the kind of compromise that I can hold as jury misconduct. So, that's my ruling on it, Counsel."

We agree with this reasoning. It is axiomatic that a jury verdict cannot be impeached by evidence of intrinsic as opposed to extrinsic influences on juror deliberations. *See* Stein v. New York, 346 U.S. 156, 178, 73 S.Ct. 1077, 97 L.Ed.2d 1522, 1539 (1952); Hyde v. United States, 225 U.S. 347, 383–384, 32 S.Ct. 793, 56 L.Ed. 1114, 1132 (1912); Luna v. Beto, 474 F.2d 95 (5th Cir. 1973); United States v. Blackburn, 446 F.2d 1089, 1091 (5th Cir. 1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 679, 30 L.Ed.2d 665 (1972); United States v. Schroeder, 433 F.2d 846, 851 (8th Cir. 1970), cert. denied, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1971); United States v. Betancourt, 427 F.2d 851, 854 (5th Cir. 1970). In the instant case, the only influence felt was that of the panel's collective reasoning. No evidence of external influence was adduced. Consequently, this case is squarely within the facts of United States v. Schroeder, *supra,* and the principle established in the aforementioned cases. The jurors may not impeach their verdict in this case.

Thus, we hold that all of the myriad contentions raised by Johnson are without merit. Accordingly, the judgment of conviction is affirmed.

Affirmed.