UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth J. MASAT, Defendant–
Appellant.

No. 90–4846.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1991.

Rehearing and Rehearing En Banc
Denied Jan. 10, 1992.

---

Kenneth Joseph Masat, pro se.

Robert E. Lindsay, Gail Brodfuehrer, Alan Hechtkopf, Karen Quesnel, Brett Dignam, Regina A. Hart, Dept. of Justice, Washington, D.C., Jeffrey J. Strand, Asst. U.S. Atty. and Bob Wortham, U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before KING, JOHNSON, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Pro se plaintiff Kenneth J. Masat ("Masat") appeals his conviction for tax evasion, alleging that he is entitled to a new trial due to improper voir dire procedure, discriminatory use of peremptory challenges, incorrect jury instructions, incorrect denial of a request for disclosure of alleged exculpatory materials, incorrect evidentiary rulings and quashing of subpoenas, and lack of subject matter jurisdiction and personal jurisdiction. Finding no error, we affirm.

## I.

Masat was a pilot with Continental Airlines from 1979 through 1981. During these years, although he had a gross income that required him to file an income tax return,[1] Masat failed to file his income tax returns.

Masat submitted numerous W-4 forms to Continental Airlines in order to limit the amount of income tax withheld from his wages. He maintains, however, that there was nothing false about those W-4 forms. Masat used various methods to conceal his income and assets: he claimed he was a minister and, thus, exempt from taxes; he also used false social security numbers and false names to conceal assets. Masat was tried and convicted by a jury for income tax evasion for the years 1979 through 1981. Masat now appeals [2] and seeks a new trial.

---

1. *See* 26 U.S.C.A. § 6012(a) (West 1989 & Supp. 1991). As reflected in records provided by Continental, Masat received the following salaries: $76,122.62 in 1979; $80,365.90 in 1980; and $85,821.47 in 1981. The evidence establishes that Masat's tax liability totaled $3,920.09 for 1979, $12,202.14 for 1980, and $12,689.00 for 1981.

2. This trial is Masat's second trial on tax evasion charges. In *United States v. Masat,* 896 F.2d 88 (5th Cir.1990) ("Masat I"), this court reversed defendant's conviction and remanded the case for a new trial; this court found that the district court failed to clearly explain to the jury that 26 U.S.C.A. § 7201 requires proof of affirmative acts of evasion. *Id.* at 97–99. Section 7201 of Title 26 of the United States Code states:

   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000

## II.

### A.

Masat argues that the district court failed to use voir dire procedures that would reasonably disclose whether jury panel members were prejudiced as a result of being "the subject of any audit or other tax investigation" by the Internal Revenue Service. *See* 26 U.S.C.A. § 6103(h)(5) (West 1989 & Supp.1991).

This court reviews the district court's handling of procedures set forth in 26 U.S.C.A. § 6103(h)(5) to determine whether the procedure followed by the district court was prejudicial to Masat. *See Masat I,* 896 F.2d at 95. Even if this court finds error, this court evaluates that error to determine whether it is harmless. *Id.*

Section 6103(h)(5) of Title 26 of the United States Code provides that:

> In connection with any judicial proceeding described in paragraph (4) to which the United States is a party, the Secretary shall respond to a written inquiry from an attorney of the Department of Justice ... involved in such proceeding or any person ... who is a party to such proceeding as to whether an individual who is a prospective juror in such proceeding has or has not been the subject of any audit or other tax investigation by the Internal Revenue Service. The Secretary shall limit such response to an affirmative or negative reply to such inquiry.

Prior to his second trial, Masat requested a list of prospective jurors so that he could make an inquiry pursuant to section 6103(h)(5). The district court ordered that Masat be provided with the list. Masat received the list and sent it to the Secretary of Treasury, and the Secretary of Treasury replied pursuant to section 6103(h)(5). However, prior to voir dire, defendant told the district court that the list only went back five years, despite the fact that section 6103(h)(5) contains no time limitation on the information to be provided by the Secretary of Treasury.

Masat argues that the information obtained from the Secretary of Treasury pursuant to section 6103(h)(5) was incomplete and that he was prejudiced by the district court's failure to strike the jury panel, or continue the jury selection until he obtained complete information.[3] The Government contends that Masat was not prejudiced, and that the district court allowed Masat ample opportunity to explore any alleged prejudices.

The Government's arguments are persuasive in light of this court's reasoning in *Masat I,* 896 F.2d at 95. In *Masat I,* Masat received the names of potential jurors in time to write to the Secretary of Treasury, but he did not receive complete information on all of the jurors in time for trial. Masat sought a continuance to get the additional information, but that motion was denied. However, on voir dire, the district court did ask the jurors if they had been the subject of an audit or controversy with the I.R.S. On appeal, this court stated that "[a]lthough the district court should have allowed Masat time to discover the juror information from the Secretary, any error was not prejudicial, for the jurors were asked the relevant questions by the trial judge." *Id.* Thus, this court found that any error in failing to grant Masat a con-

---

($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.
26 U.S.C.A. § 7201 (West 1989 & Supp.1991).

**3.** Masat cites *United States v. Sinigaglio,* 925 F.2d 339, 341–42 (9th Cir.), *amended by* 942 F.2d 581 (9th Cir.1991), in which the Ninth Circuit held that the district court's failure to grant a continuance in jury selection when the tax information provided covered only the last six years was reversible error because "the significant risk of prejudice was not negated...." Unlike this case, the *Sinigaglio* jurors were not asked adequate additional questions during *voir dire* to remedy any possible prejudice to Sinigaglio. Masat also cites *United States v. Hashimoto,* 878 F.2d 1126, 1130 (9th Cir.1989), in which the Ninth Circuit held that, because the defendant was not provided the jury list early enough before trial to enable him to make inquiries under 26 U.S.C.A. § 6103(h)(5), reversal was required. *Hashimoto* is inapposite: Masat was given the jury list in a timely manner before the trial, while Hashimoto was not given the list early enough to make an inquiry under section 6103(h)(5).

tinuance to obtain further information was harmless. *Id.*

In the present case, the district court asked the venirepersons questions regarding any potential prejudice they might have toward the Government or Masat as a result of the prospective jurors' prior interactions with the I.R.S. The district court also allotted the Government and Masat time to ask additional questions about any such association with the I.R.S. Masat has not shown how he was prejudiced by the venire process or by the inclusion of any specific venireperson onto the jury. As the district court asked the prospective jurors probing and specific questions regarding any past association with the I.R.S., this court finds that any error resulting from the Secretary of Treasury's limited list was harmless. *Id.*

## B.

■ Masat asserts that the district court improperly denied his "Rejection of Jury" motion, which was based on the Government's alleged discriminatory use of peremptory challenges. Masat's argument is based primarily on *Batson v. Kentucky,* 476 U.S. 79, 96–98, 106 S.Ct. 1712, 1723–24, 90 L.Ed.2d 69 (1986), in which the Court set forth a test to establish a prima facie case of discrimination because of the prosecutor's use of peremptory challenges at a defendant's trial. Defendant must show that: (i) he is a member of a cognizable racial group; (ii) the prosecutor has exer-

cised peremptory challenges to remove people sharing the defendant's race from the venire; and (iii) these facts and other relevant circumstances raise an inference that the prosecutor used the practice to exclude persons from the venire on account of their race. *Id.* Once the defendant makes this prima facie showing, the burden shifts to the Government to come forward with a race-neutral explanation for excusing the jurors in question. *Id.* The trial court must then determine if the defendant has established purposeful discrimination. *Id.*[4] The Court also noted that a defendant's objection to the prosecutor's challenges must be timely. *Id.* at 99, 106 S.Ct. at 1725.

Both Masat and the Government agree that Masat did not object to the prosecutor's challenges until the first day of trial—long after the unselected venirepersons had been dismissed.[5] In fact, Masat did not object until several weeks after the jury was chosen, sworn in, and the unselected venirepersons released. The Government contends that *Batson* does not apply because Masat's motion in the district court was untimely. This court has stated that a *Batson* motion must be timely in order to be maintained.[6]

Masat argues that he objected at such a late date because it was only then that he had enough time to examine the Government's challenges. Unfortunately, the district court was not in a position to entertain Masat's afterthoughts and therefore overruled his objections to the jury. The dis-

---

**4.** Recently, in *Powers v. Ohio,* ⸺ U.S. ⸺, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court held that a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race.

**5.** The jury was selected on July 9, 1990. The trial began on August 27, 1990, 49 days later.

**6.** *See, e.g., United States v. Romero-Reyna,* 867 F.2d 834, 836–837 (5th Cir.), *appeal after remand,* 889 F.2d 559 (5th Cir.1989), *cert. denied,* 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990) (*Batson* objection timely because made immediately after completion of jury selection, before the jury venire was dismissed, and prior to the commencement of the trial); *Sawyer v.*

*Butler,* 881 F.2d 1273, 1286 (5th Cir.1989), *cert. granted,* 493 U.S. 1042, 110 S.Ct. 835, 107 L.Ed.2d 830 (1990), *motion granted,* ⸺ U.S. ⸺, 110 S.Ct. 1468, 108 L.Ed.2d 606 (1990), *aff'd,* ⸺ U.S. ⸺, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), *later proceeding,* 567 So.2d 597 (La. 1990), *habeas corpus proceeding,* 772 F.Supp. 297 (E.D.La.1991), *aff'd, stay vacated,* 945 F.2d 812 (5th Cir.1991) (citation omitted) (a timely objection is an essential element of a claim of racial discrimination in the exercise of peremptory challenges under *Batson* ); *United States v. Erwin,* 793 F.2d 656, 667 (5th Cir.), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986) (*Batson* motion must be timely to be entertained; motion not timely because appellants waited a full week before moving to strike panel, trial was about to begin and unselected venirepersons had been released).

trict court apparently made no findings regarding Masat's *Batson* challenge, and Masat apparently did not request that the district court make such *Batson* findings.

Because Masat offered no credible explanation for the last-minute nature of his motion, *Batson* does not provide him with a ground for reversal or remand. This court need not review the prosecutor's use of peremptory challenge where objections to those challenges are raised long after the unselected venirepersons have been sent home. *See Thomas v. Moore*, 866 F.2d 803, 804–05 (5th Cir.), *cert. denied*, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989) (explaining importance of timely objection for *Batson* claim).

### C.

Masat maintains that the district court failed to properly instruct the jury regarding: (i) his church defense; (ii) his defense of reliance on professionals; and (iii) the essential elements of willfulness.

■ Trial judges have substantial latitude in tailoring their instructions if they fairly and adequately cover the issues presented in the case. *See United States v. Hunt*, 794 F.2d 1095, 1097 (5th Cir.1986), *later proceeding*, 688 F.Supp. 265 (N.D.Tex.1987), *later proceeding*, 857 F.2d 1471 (5th Cir.1988), *post-conviction proceeding, appeal dismissed*, 940 F.2d 130 (5th Cir.1991) (citations omitted). A district court's refusal to deliver a requested instruction constitutes reversible error only if three conditions exist: (i) the requested instruction is substantively correct; (ii) the requested instruction is not substantially covered in the charge actually given to the jury; and (iii) the requested instruction concerns an important point in the trial so that

the failure to give it seriously impairs the defendant's ability to present a given defense effectively. *Id.; see also United States v. Molina–Uribe*, 853 F.2d 1193, 1201 (5th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989) (citation omitted); *United States v. Duvall*, 846 F.2d 966, 971 (5th Cir.1988) (citations omitted). An abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense. *Hunt*, 794 F.2d at 1097.[7]

### (i) Masat's Church Defense

■ Masat sought to base a defense to tax evasion on the theory that he was a minister and therefore exempt from paying federal income taxes. Masat alleges that the district court abused its discretion in refusing to give the instructions he requested concerning this defense.

The Government maintains that the district court gave the jury an instruction which allowed it to determine whether the church in which Masat was a minister was in fact exempt under 26 U.S.C.A. § 501(c)(3) (West 1988 & Supp.1991). A section 501(c)(3) organization that is "operated exclusively for religious ... purposes" is exempt from taxation if no part of the net earnings inure to the "benefit of any private shareholder or individual...." *United States v. Daly*, 756 F.2d 1076, 1082–83 (5th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985). According to Masat, the instructions given were grossly incorrect regarding whether any part of the net earnings inured to his benefit. Masat argues that: the instructions dealing with the validity of his church that he proposed should have been given;[8]

---

7. The Government intimates that Masat's objections to the district court's jury instructions were either non-existent or unclear, and that, as a result, the instructions should be analyzed under the plain error standard of review. *See, e.g., United States v. Jones*, 673 F.2d 115, 118–19 (5th Cir.), *cert. denied*, 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982); *United States v. Richerson*, 833 F.2d 1147, 1155 (5th Cir.1987). Although Masat did object to parts of the instructions, his objections were not always specific and clear. Even giving pro se plaintiff

Masat the benefit of the doubt and employing the reversible error standard of review, Masat's arguments regarding the jury instructions fail.

8. Masat's proposed Instruction number 19 was not included in the briefs nor is it in the record. Thus, we are unable to review this proposed instruction. The burden of presenting an adequate record on appeal is on the appellant. *See* Fed.R.App.P. 10(b).

Masat's proposed Instruction number 26 states:

the district court's instructions regarding the validity of W–4 forms was in error;[9] and that the court's denial of an instruction regarding an I.R.S. publication called Circular E, Employer's Tax Guide, was also in error.[10] The Government maintains that

> 1. If the CPA for the Plaintiff and the CPA for the Defendant's opinions differ on the validity of the W–4's, you shouldn't give more weight to the governments [sic] testimony than the Defendant's.
> 2. The validity of the church (The Universal Life Church) or its ministers has never been challenged. Therefore, as a matter of law you should consider it to be valid.

9. The district court's instruction states:

> In determining whether the Employment Tax Form W–4's in issue were false and fraudulent, you may consider whether the defendant was, in fact, a minister of a church performing duties as such, and thus exempt from withholding of income and employment taxes during the years 1979, 1980 and 1981.

10. Masat requested an instruction "regarding donations and Circular E so we can clarify to the jury the fact that you can donate to a church aside from having a vow of poverty and still be exempt." The proposed instruction states:

> The jury is instructed that there are many circumstances that authorize 'exempt' status such as donations to churches and you may consider all the evidence in determining whether a W–4 is correct or incorrect. Other factors should be considered for a W–4 to be false and fraudulent.

11. The district court instructed the jury:

> In order to be exempt from income taxes, an individual who asserts that he has taken a vow of poverty must contribute all of his assets and income to an organization which meets certain tests. In this regard, it is required that the organization be both organized and operated exclusively for religious, charitable or educational purposes, and no part of its net earnings may inure to the benefit of any private individual, including the defendant.
>
> You are thus instructed that, in determining whether a vow of poverty was executed in good faith and was adhered to, you may consider whether the defendant continued to have dominion and control over any funds allegedly given over by him to a religious, charitable or educational organization, and whether any part of the net earnings of such organization inured to the benefit of any private individual, including the defendant.
>
> An organization is regarded as exclusively for religious, charitable or educational purposes *only* if all the following criteria are met:

the jury instructions the district court gave were adequate.

The district court instructed the jury regarding exemptions for religious organizations and the federal income tax obligations of ministers.[11] Masat has failed to clearly

> (1) The organization must have been organized and operated exclusively for exempt purposes, that is, for religious, charitable or educational purposes, and not (except in an insubstantial degree) for a non-exempt purpose. That is to say, an organization is not tax exempt if its activities involve a single non-exempt purpose that is substantial in nature, regardless of the number or importance of truly exempt purposes.
>
> (2) No part of the net earnings of the organization may inure in whole or in part to the benefit of any private stockholder or individual. A private individual for these purposes is a person having a personal and private interest in the activities of the organization. The phrase, *net earnings inure to the benefit of a private individual,* means that funds of the organization are used by the private organization for personal purposes.
>
> (3) The organization cannot have been organized or operated for the benefit of the personal or private interests of an individual, but only for a public purpose. In other words, the organization cannot have been organized or operated for the benefit of private interests, such as designated individuals, the person creating the organization or his family, or for persons controlled by such private interests. Furthermore, an organization is *not* organized exclusively for religious, charitable or educational purposes unless its assets upon dissolution would be distributed for an exempt purpose and not to its members or private individuals.
>
> You are instructed that the defendant was not exempt from income tax if:
>
> (1) The organization through which the defendant claimed exemption was not organized or not operated exclusively for religious, charitable or educational purposes; or
>
> (2) Any part of the organization's net earnings inured to the benefit of private individuals; or
>
> (3) The charter of such organization permitted the return of the organization's assets to any of its members or to private individuals if the organization were dissolved; or
>
> (4) The organization met or served a private, as opposed to a public interest.
>
> If you find beyond a reasonable doubt that the government has proved one or more of the four factors or tests listed above, then you are instructed that the defendant was not exempt from the payment of income tax....

identify how the instructions he alleges should have been given were not substantially covered in the charge actually given to the jury, or concerned an important point in the trial so that the failure to give them seriously impaired the defendant's ability to effectively present his defense based on his church activities. Accordingly, the district court did not abuse its discretion in failing to give Masat's requested instructions.

### (ii) Masat's Defense of Reliance on Professionals

Masat urged a second defense to income tax evasion: reliance on advice from various professionals—Gordon Tyner, an attorney; Guy Curtis, an attorney; and Chris Noble, an accountant and attorney. He argues that despite the evidence regarding his reliance, the district court mistakenly refused to give his proposed instruction number 25.[12]

■ Masat does not clearly articulate how he relied on these professionals. Masat points to documents, such as letters and legal documents, which he claims indicate such reliance. It appears that over a period of years, including the years for which he was prosecuted, Masat had contact with these individuals. Such contact, however, does not necessarily indicate reliance on

these professionals' advice. To establish reliance as a defense, Masat must show that: (i) he relied in good faith on a professional and (ii) he made complete disclosure of all the relevant facts. *See United States v. Meyer*, 808 F.2d 1304, 1306 (8th Cir.1987) (citations omitted); *United States v. Stone*, 431 F.2d 1286, 1288–89 (5th Cir. 1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971); *United States v. Conforte*, 624 F.2d 869, 877 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (citations omitted).

■ Masat has failed to establish reliance. Regarding Gordon Tyner, there is no evidence that Masat relied in good faith on any advice Gordon Tyner gave, nor any evidence that Masat disclosed all the facts regarding his claimed exempt status to Gordon Tyner. Similarly there is no evidence that Masat relied on advice rendered by Guy Curtis and Chris Noble. Masat's strongest argument is that he spoke with these people, and that he has some documentation of these conversations. However, as the Government points out, although Masat had contact with these individuals, he did not fully disclose all the facts regarding his claimed exempt status to them, and, therefore, any such reliance was not in good faith. Masat's ability to present his defense was not seriously im-

---

The federal income tax is levied on income received by ministers. When an individual provides ministerial services as his trade or business, and receives no separate salary, the income of that business is taxable to the minister. Voluntary contributions, when received by the minister, are income to him. Payments made to a minister as compensation for his services also constitute income to him. If money is given to a minister for religious purposes, any money used instead for the personal benefit of the minister becomes taxable to him.

The law provides that funds or property received from certain sources do not constitute taxable income. Since no income tax is levied on such funds or property, they are not properly reported as income. Such nontaxable funds or property includes such items as gifts, inheritances. . . .

**12.** Masat's proposed Instruction 25 states:

Defendant's conduct is not willful if he acted through negligence, inadvertence [sic] or a mistake, or due to good faith misunderstanding of the requirements of the law.

If you find from all the evidence that the Defendant was honestly mistaken in his belief, you must find him not guilty as to the charges made in the indictment.

If a person in good faith believes that he has done all that the law requires, he cannot be guilty of a criminal intent to willfully fail to [make] a tax return. But if a person acts without reasonable ground for a belief that his conduct is lawful, it is for the jury to decide whether he has acted in good faith or whether he willfully intended to fail to [make] a tax return.

The issue of intent as to whether the Defendant willfully failed to make an income tax return is one which the jury must determine from a consideration of all the evidence in the case bearing on the Defendant's state of mind.

The Defendant has introduced evidence showing that he relied on the advice of others. If you believe this evidence, or if this evidence raises a reasonable doubt in your mind as to the guilt of the Defendant, then you will acquit the Defendant and say by your verdict not guilty.

paired. Accordingly, the district court did not abuse its discretion by not giving the reliance instruction.

### (iii) The Willfulness Instruction

■ Masat also contests the district court instructions regarding the essential elements of tax evasion under 26 U.S.C.A. § 7201.[13] To establish a violation of section 7201, the Government must prove beyond a reasonable doubt: (1) the existence of a tax deficiency; (2) an affirmative act constituting evasion or attempted evasion of the tax; and (3) willfulness. *See United States v. Kim*, 884 F.2d 189, 192 n. 1 (5th

Cir.1989) (citation omitted); *United States v. Chesson*, 933 F.2d 298, 303–04 (5th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991) (citations omitted). The Government argues that the district court properly instructed the jury on these elements. Masat alleges that his proposed instructions 1, 8, and 9 should have been given,[14] and he specifically questions the district court's instruction regarding willfulness. The district court's instructions, however, adequately set forth the law for the jury.[15]

■ The term willful means a voluntary, intentional violation of a known legal duty.

Willfulness is an essential element of the crime of tax evasion. A person acts "willfully" in regard to the offenses charged against the defendant, if he voluntarily and intentionally violates a known legal duty; specifically, a person acts willfully if: (1) he commits such a violation for the purpose of depriving the government of taxes and revenues imposed by and derived from the income tax laws; (2) it is the legal duty of such person to make such payments to the government; and (3) such person knows it is his legal duty to make such payments.

Defendant's conduct is not "willful" if he acted through negligence, even gross negligence, inadvertence, justifiable excuse or mistake, or due to his good faith misunderstanding of the requirements of the law. In this connection the defendant contends that he had a good-faith misunderstanding of his obligations under the law. Whether such a good-faith misunderstanding exists or not is a question of fact for your determination. You are instructed that if you find defendant, in good faith, did not understand his legal obligations, he is entitled to an acquittal. However, you are also instructed that mere disagreement with the law does not constitute good faith misunderstanding of the requirements of the law. It is the duty of all persons to obey the law whether or not they agree with it.

Willfulness necessarily depends upon the defendant's state of mind at the time of the acts or omissions with which he is charged. Intent may be established through inferences drawn from the facts and circumstances established by the evidence.

The government contends that the defendant filed income tax returns in the years prior to the years charged in the indictment. If you find that the defendant did file returns in previous years, you may infer that the defendant knew the law required him to make and file returns. Such knowledge may be considered by you as a circumstance bearing upon the question of whether the defendant's conduct was willful.

---

13. *See supra* note 2.

14. Masat's proposed instructions read as follows:

Instruction 1:

To convict defendant of an attempt to evade under this section, the government must allege and prove an affirmative act, and cannot rely upon a failure to act or failure to file a tax return, even if that failure to act or failure to file a tax return was willful.

Instruction 8:

'INTENT TO DEFRAUD'—DEFINED

To act with 'intent to defraud' means to act willfully, and with the specific intent to deceive or cheat; ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself.

However, the evidence in the case need not establish that the United States or any person was actually defrauded, but only that the accused acted with the 'intent to defraud.'

An act is done 'willfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

Instruction 9:

'UNLAWFULLY'—

To omit unlawfully means contrary to law. So, 'unlawfully' to fail to act means willfully to fail to do something the law requires to be done.

An omission or failure to act is 'willfully' done, if done voluntarily and intentionally and with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

15. The district court instructed the jury:

An act is done knowingly if it is done voluntarily. The purpose of adding the word, "knowingly," in an indictment is to insure that no one would be convicted for an act done because of mistake, accident, or other innocent reason.

*See Chesson*, 933 F.2d at 304 (citation omitted). The district court explained this term.[16] Masat's main argument is that the district court should have instructed the jury that the Government must prove that he acted in bad faith or with evil intent. In *Cheek v. United States*, — U.S. —, 111 S.Ct. 604, 609-10, 112 L.Ed.2d 617 (1991), *on remand*, 931 F.2d 1206 (7th Cir.1991), the Court similarly noted that willfulness simply means a voluntary, intentional violation of a known legal duty. The Court did not expressly adopt the bad purpose or evil motive language which Masat requested. Thus, the district court's instruction was adequate and embodied the applicable law.[17]

## D.

■ Masat alleges that the district court erred in denying his motion for the disclosure of exculpatory materials, including Freedom of Information Act documents,[18] grand jury documents, and a special agent's report.

Masat claims that these exculpatory materials were required to be produced pursuant to *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), in which the Court stated that the prosecution's suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. Although the *Brady* rule requires a prosecutor to disclose evidence favorable to an accused that, if suppressed, would deprive him of a fair trial,[19] this court applies a strict standard of materiality. *See United States v. Medel*, 592 F.2d 1305, 1317 (5th Cir.1979)

(citations omitted). Thus, this court looks to see if the alleged exculpatory evidence is materially favorable to Masat as to guilt, punishment, or both. *Id.*

Masat argues that certain Freedom of Information Act documents should have been disclosed to him because the documents would have allowed him to present other defenses and prevent the Government from presenting its best case. Masat alleges that many of these documents were likely obtained by the Government illegally. Although he does not explicitly say so, his argument for the production of the grand jury documents and special agent's report appears to be based on similar grounds.

The Government argues that the Freedom of Information Act documents were not exculpatory and that Masat had access to these documents by other means. Regarding the grand jury documents, the Government claims that Masat's request was overly broad and that these documents did not contain anything material to Masat's guilt or punishment. The Government maintains that the special agent's report was not material because any information the report contained could have been produced by other means.

Although the district court apparently did not conduct an in camera inspection of the alleged *Brady* documents, Masat has not adequately shown how the documents were material to his defense, how the documents' production would have changed the outcome of the case, or that the documents' failure to be produced has undermined the confidence in the integrity of the outcome of his trial. *See, e.g., United*

16. *See supra* note 15.

17. Masat also argues that he was not allowed to call an expert witness to establish his sincerity in his belief, apparently for his good faith defense. The Government notes that the district court did not prevent Masat from calling a psychologist to testify on his behalf. Masat also argues that the jury should not have been allowed to consider his past income tax filing history ("filing history"). The Government argues that a jury is allowed to consider a defendant's past filing history to decide if defendant voluntarily and intentionally violated a known legal duty, and cites *United States v. Green*, 757

F.2d 116, 123-24 (7th Cir.1985). There is no evidence that the district court abused its discretion regarding the jury instructions in this regard.

18. The Freedom of Information Act is codified at 5 U.S.C.A. § 552 (West 1977).

19. *See United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), *on remand*, 798 F.2d 1297 (9th Cir.1986), *later proceeding*, 659 F.Supp. 223 (W.D.Wash.1987), *aff'd in part and rev'd in part*, 837 F.2d 371 (9th Cir.1988), *cert. denied*, 488 U.S. 924, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

*States v. Bagley,* 473 U.S. 667, 677–78, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985), *on remand,* 798 F.2d 1297 (9th Cir.1986), *later proceeding,* 659 F.Supp. 223 (W.D.Wash. 1987), *aff'd in part and rev'd in part,* 837 F.2d 371 (9th Cir.1988), *cert. denied,* 488 U.S. 924, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988); *Hughes v. Hopper,* 629 F.2d 1036, 1038–40 (5th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981).

### E.

Masat also maintains that the district court abused its discretion by quashing subpoenas to Government employees and in precluding the admission of evidence.

#### (i) Quashing of Subpoenas/Witness Recall

■ The decision whether to grant a request for a subpoena rests within the district court's discretion. *See United States v. Johnson,* 495 F.2d 1097, 1102 (5th Cir.1974) (citations omitted). A district court does not abuse this discretion when it quashes a subpoena seeking irrelevant or immaterial information. *Id.*

■ Masat had a subpoena duces tecum served on three Government witnesses: I.R.S. District Director Gary Booth, and I.R.S. Austin Service Center employees Carolyn Wunneberger and Mark O'Brien. The district court quashed these subpoenas, and Masat argues that the district court erred in quashing Booth's subpoena because Booth would have shed light on questions regarding Masat's church and his grounds for exemption. The Government maintains that the criteria for what constitute exemptions are legal criteria, and that only the judge is entitled to instruct the jury about the law. Masat also contends that Carolyn Wunneberger and Mark O'Brien should have been subpoenaed to testify about assessment procedures and possible recording errors. The Government argues that the testimony of Carolyn Wunneberger and Mark O'Brien would not have helped Masat negate his tax deficiency, given that Masat admitted he failed to file tax returns.

There is no indication in the briefs or record that Masat had any connection with these individuals he sought to subpoena, other than his desire to obtain information about I.R.S. procedures. The information Masat sought to obtain was either provided by other witnesses or explained in the district court's jury instructions. Given the district court's broad discretion to grant or deny a request for a subpoena, *see Johnson,* 495 F.2d at 1102, there was no abuse of discretion in this case.

■ Masat also argues that the district court erred in refusing to allow him to recall agent Darrell Dillard to testify about an I.R.S. investigation of Masat's church. Although Masat was not able to call Dillard as his witness, the record shows that after the Government questioned Darrell Dillard on direct examination, Masat extensively cross-examined him and later recross-examined him. Masat was thus able to question Darrell Dillard.

Moreover, there is no evidence that any subsequent witness gave an account which differed significantly from the testimony of Darrell Dillard on any crucial point. Under these circumstances, the court did not abuse its discretion and Masat's argument has no merit. *See United States v. James,* 510 F.2d 546, 551 (5th Cir.), *cert. denied sub. nom. Vasquez v. United States,* 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975) (citations omitted) (trial judge has broad discretion in controlling the extent of direct and cross-examination).

#### (ii) Evidentiary Rulings

The district court has wide discretion in determining the relevance and materiality of evidence. *See United States v. Ashley,* 555 F.2d 462, 465 (5th Cir.), *cert. denied sub. nom. Leveritte v. United States,* 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977) (citation omitted); *United States v. Grimm,* 568 F.2d 1136, 1138 (5th Cir.1978) (citation omitted). The district court's evidentiary rulings will not be disturbed on appeal absent an abuse of discretion. *Id.*

■ Masat questions the district court's exclusion of: (1) a 1985 document from the

National Commodity and Barter Association that would allegedly show he was entitled to a tax refund; (2) the testimony of an accountant, Dan Unger, who would testify that Masat was entitled to a refund; (3) a 1987 opinion letter from attorney Guy Curtis about Masat's tax obligations; (4) the testimony of former I.R.S. employee Paul DesFosses who allegedly made an administrative determination that Masat was not required to file a tax return for 1979; and (5) a letter from the I.R.S. to the Universal Life Church in Modesto, California, regarding the church's tax exempt status.

The Government's response is that: (1) the National Commodity and Barter Association evidence was prepared after the period for which Masat was prosecuted; (2) accountant Dan Unger was allowed to testify; (3) the opinion letter of attorney Guy Curtis was irrelevant; (4) the testimony of former I.R.S. employee Paul DesFosses was irrelevant, and (5) the letter to the Universal Life Church in Modesto California was irrelevant. The district court agreed with these contentions, and excluded the evidence.

Masat's briefs and the record fail to show that the district court abused its wide discretion in its evidentiary rulings regarding these matters. The record indicates that the district court was simply attempting to manage the trial by eliminating cumulative and irrelevant proffered evidence. *See* FED.R.EVID. 403 and 611(a). These circumstances do not constitute an abuse of discretion.

### F.

■ Finally, Masat alleges that the district court lacked subject matter jurisdiction over this action and personal jurisdiction over him. We disagree. As the Government correctly notes, district courts have original jurisdiction of offenses against the laws of the United States pursuant to 18 U.S.C.A. § 3231. *See United States v. McCarty*, 665 F.2d 596, 597 (5th Cir.), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1287 (1982). It follows that district courts have jurisdiction over Title 26 offenses. *See United States v. Przybyla*, 737 F.2d 828, 829 (9th Cir.1984),

*cert. denied*, 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985) (citations omitted).

■ As for Masat's personal jurisdiction contention, the basis of this argument is not clear. Masat provides no case law nor cogent analysis to support this contention. Masat's brief states he is a "non-citizen" and a "non-resident." More specifically, Masat claims the district court lacked personal jurisdiction over him because he is a "freeman." In light of the fact that Masat was indicted for tax evasion, appeared before the district court, and has offered this court no support for his lack-of-personal-jurisdiction contention, we find his argument frivolous. *See Anders v. State of California*, 386 U.S. 738, 747, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967) (frivolous appeal is one without arguable merit); *United States v. Schmitt*, 784 F.2d 880, 882 (8th Cir.1986), *habeas corpus proceeding*, 752 F.Supp. 306 (D.Minn.1990), *aff'd*, 938 F.2d 189 (8th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 592, 116 L.Ed.2d 616 (1991) (appellants' argument that the district court lacked personal jurisdiction over them because they were "natural freemen" is entirely frivolous).

### III.

Accordingly, we AFFIRM.